UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| I3ARCHIVE, INC. and NATIONAL DIGITAL MEDICAL ARCHIVE, INC., <br><br>　　　Plaintiffs and Counterclaim-Defendants, <br><br>　　v. <br><br>INSITE ONE, INC., <br><br>　　　Defendant and Counterclaim-Plaintiff. | Civil Action No. 2:06-CV-04286-MAM |

## DECLARATION OF CAREN K. KHOO

I, CAREN K. KHOO, hereby declare:

1. I am a Counsel employed by the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, attorneys for Defendant InSite One, Inc. ("InSite One") in the above-captioned matter.

2. I submit this declaration in support of InSite One's Reply Brief in Support of Its Request for Plaintiffs to Produce Their Complete Source Code in Native Electronic Format Pursuant to the Protective Order, filed May 10, 2007.

3. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could and would testify competently thereto.

4. A true and correct copy of InSite One's Response to Plaintiffs' Interrogatory No. 1, excerpted from Defendant InSiteOne, Inc.'s Responses to Plaintiffs' First Set of Interrogatories (Nos. 1-9), served on February 23, 2007, along with an excerpt of Exhibit A, a claim chart appended to those Responses, for claim 1 of the '742 patent, is attached as Exhibit 1.

5. A true and correct copy of the decision *Forterra Sys., Inc. v. Avatar Factory*, No. C-05-04472-PVT, 2006 U.S. Dist. LEXIS 63100 (N.D. Cal. Aug. 22, 2006), is attached as Exhibit 2.

\*　　\*　　\*

I declare under penalty of perjury that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed on May 10, 2007, in New York, New York.

                                                                                     /s/ Caren K. Khoo
                                                                                      Caren K. Khoo

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document (with exhibits) was electronically filed and served on May 10, 2007, on the following counsel:

>Benjamin E. Leace
>(beleace@ratnerprestia.com)
>Stanley Weinberg
>(sweinberg@ratnerprestia.com)
>Kevin A. Keeling
>(kakeeling@ratnerprestia.com)
>RATNERPRESTIA, P.C.
>1235 Westlakes Drive
>Suite 301
>Berwyn, PA  19312

/s/ Kevin W. Goldstein

Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| i3ARCHIVE, INC. and NATIONAL DIGITAL MEDICAL ARCHIVE, INC., <br><br> Plaintiffs and Counterclaim-Defendants, <br><br> v. <br><br> INSITE ONE, INC., <br><br> Defendant and Counterclaim-Plaintiff. | Civil Action No. 2:06-CV-04286-MAM <br><br> **JURY TRIAL DEMANDED** |

### DEFENDANT INSITE ONE, INC.'S RESPONSES TO PLAINTIFFS I3ARCHIVE, INC. AND NATIONAL DIGITAL MEDICAL ARCHIVE, INC.S' FIRST SET OF INTERROGATORIES NOS. 1-9

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of Pennsylvania, Defendant and Counterclaim-Plaintiff InSite One, Inc. ("InSite One") hereby responds to the First Set of Interrogatories (Nos. 1-9) of Plaintiffs and Counterclaim-Defendants i3Archive, Inc. and National Digital Medical Archive, Inc. (collectively, "i3Archive").

### GENERAL OBJECTIONS

1.    InSite One objects to i3Archive's Interrogatories to the extent that they impose or seek to impose burdens or obligations different from or in excess of those required by Rules 26 and 33 of the Federal Rules of Civil Procedure or Local Rule 26.1 of the United States District Court for the Eastern District of Pennsylvania.

13. For these reasons, and without waiving its right to raise other objections at the appropriate time, InSite One objects to i3Archive's Interrogatories Nos. 1-9. InSite One incorporates each of the foregoing General Objections into each and every answer below, and subject to and without waiving these General Objections, InSite One responds specifically as follows:

## RESPONSES TO INTERROGATORIES

### I3ARCHIVE'S INTERROGATORY NO. 1

Identify each claim in the '742 patent that InSite One alleges is infringed by i3Archive and which InSite One asserts against i3Archive, and for each such claim provide a claim chart identifying each allegedly infringing i3Archive Product and where each limitation of such claim is found (literally or under the doctrine of equivalents) within each allegedly infringing i3Archive Product.

### INSITE ONE'S RESPONSE TO INTERROGATORY NO. 1

In addition to the general objections stated above, InSite One objects to this Interrogatory as premature in light of the timetable provided in the Court's January 12, 2007, Scheduling Order and Rule 26(f) Case Schedule, as it calls for a comparison and analysis of the claims of the '742 patent against the "i3Archive Products" and also seeks to elicit InSite One's claim construction position. InSite One also objects to this Interrogatory as premature to the extent that it seeks information that will be the subject of expert opinion and testimony. InSite One objects to i3Archive's request for "a claim chart identifying each allegedly infringing i3Archive Product and where each limitation of such claim is found (literally or under the doctrine of equiravlents) within each allegedly infringing i3Archive Product" to the extent that those facts are within i3Archive's possession, custody and control and have not been provided by i3Archive to InSite One. InSite One further objects to this Interrogatory to the extent that it calls for the disclosure

4

of documents or information that are protected by the attorney-client privilege and/or work-product immunity.

Subject to and without waiving the foregoing general and specific objections, InSite One answers as follows:

On September 1, 2006, Mark G. Matuschak of WilmerHale sent a letter to Mr. Derek Danois, President of NDMA, explaining that neither InSite One nor WilmerHale had access to i3Archive's methods and systems, and requesting information about i3Archive's systems to be able to determine infringement or non-infringement relative to any claim of the '742 patent. i3Archive failed to respond substantively, even after WilmerHale sent a follow-up letter to i3Archive's counsel, Daniel N. Calder of RatnerPrestia, on September 14, 2006, again requesting such information about i3Archive's systems.

On September 25, 2006, i3Archive filed the instant lawsuit in the Eastern District of Philadelphia, asking for declaratory judgment of non-infringement and invalidity of the '742 patent. If, in fact, i3Archive did not infringe, i3Archive could easily have provided the information that InSite One sought, but declined to do so. In filing the current lawsuit, i3Archive has not presented any facts showing that InSite One had any reason to believe that the '742 patent did *not* cover the systems provided by i3Archive. i3Archive's decision to file suit thus confirmed for InSite One that i3Archive infringed and continued to infringe one or more claims of the '742 patent.

In addition to the above response, please refer to Exhibit A, attached and incorporated by reference herein. InSite One further notes that i3Archive has not yet completed its document production, and has not provided any source and executable code necessary for InSite One to

complete its analysis. InSite One's analysis is continuing and it will modify and/or supplement its response to this Interrogatory after production of i3Archive's source and executable code.

## I3ARCHIVE'S INTERROGATORY NO. 2

For each asserted claim of the '742 patent, describe in detail the conception of the asserted claim and reduction to practice (actual and constructive) of the asserted claim, including dates, personnel involved, any activities that Insite One contends show diligence from conception to reduction to practice.

## INSITE ONE'S RESPONSE TO INTERROGATORY NO. 2

In addition to the general objections stated above, InSite One objects to the phrases "conception of the asserted claim," "reduction to practice (actual and constructive)" and "any activities that InSite One contends show diligence from conception to reduction to practice" as vague, ambiguous, undefined and not reasonably calculated to lead to the discovery of admissible evidence. InSite One also objects to this Interrogatory to the extent that it calls for the disclosure of documents or information that are protected by the attorney-client privilege and/or work-product immunity.

Subject to and without waiving the foregoing general and specific Objections, InSite One answers as follows:

Conception of the invention claimed in the '742 patent occurred at least as early as November 12, 1999, when a provisional patent application (No. 60/164,998) was filed in the United States Patent and Trademark Office. Persons involved in the development of the conception and reduction to practice of the invention may include the following: David Jamroga, Richard J. Friswell, David S. Cook, and Michael K. Patenaude. Discovery is ongoing, and InSite One reserves the right to supplement this interrogatory as additional information becomes available.

objects to this Interrogatory in that "structural claim element" is undefined, vague and ambiguous. InSite One objects to this Interrogatory as premature to the extent that it asks for information that will be the subject of expert opinion and testimony, and also seeks to elicit InSite One's claim construction position. InSite One additionally objects to this Interrogatory to the extent that it improperly shifts the burden of any claim(s) or defense(s) of i3Archive to InSite One. InSite One further objects to this Interrogatory to the extent that it seeks the disclosure of documents or information that are protected by the attorney-client privilege and/or work-product immunity.

Subject to and without waiving the foregoing general and specific objections, InSite One answers as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), please refer to the '742 patent, from which an answer to this Interrogatory may be derived or ascertained from a review of that document.

As to the Objections,

Dated: February 23, 2007       By: _____
                                   Kevin W. Goldstein
                                   STRADLEY RONON STEVENS & YOUNG LLP
                                   2600 One Commerce Square
                                   Philadelphia, PA  19103-7098
                                   Telephone:  (215) 564-8000
                                   Facsimile:  (215) 564-8120

                                   Mark G. Matuschak (admitted *pro hac vice*)
                                   Wendy Haller Verlander (admitted *pro hac vice*)
                                   WILMER CUTLER PICKERING
                                      HALE AND DORR, LLP
                                   60 State Street
                                   Boston, MA  02109
                                   Telephone:  (617) 526-6000

Facsimile: (617) 526-5000

Paul B. Keller (admitted *pro hac vice*)
Caren K. Khoo (admitted *pro hac vice*)
Justina L. Geraci (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR, LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Attorneys for Defendant and Counterclaim-Plaintiff, InSite One Corporation

16

## Exhibit A

| '742 Patent Claim 1 | NDMA System |
|---|---|
| 1. A system for communication, storage, retrieval and delivery of information comprising: | The NDMA system is a system for communication, storage, retrieval and delivery of information. |
| an institution server having random access memory (RAM); | The NDMA system has an institution server (*e.g.*, Wall Plug™) that has RAM (*see, e.g.*, NDMA website). |
| an institution database accessible by said institution server; | The NDMA system has an institution database, which is accessed by the institution server (*e.g.*, Wall Plug™) (*see, e.g.*, NDMA website; IBM Case Studies, National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging, (www-306.com/software/success/)). |
| software executing on said institution server for receiving information selected from the group consisting of header, images and data associated with header and each of the images from a healthcare institution; | The NDMA system has software executing on the institution server (*e.g.*, Wall Plug™) for receiving information such as header, images and data associated with the header and each of the images from a healthcare institution (*see, e.g.*, NDMA website; IBM Case Studies, National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging, (www-306.com/software/success/)). |
| software executing on said institution server for storing the received images on said database; | The NDMA system has software executing on the institution server (*e.g.*, Wall Plug™) for storing the received images on the institution database (*see, e.g.*, NDMA website; IBM Case Studies, National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging, (www-306.com/software/success/)). |
| software executing on said institution server for generating an index based upon the received information, and for storing the index in a storage selected from the group consisting of the RAM, institution database and a combination thereof; | The NDMA system has software executing on the institution server (*e.g.*, Wall Plug™) for generating an index based upon the received information, and for storing the index in a storage such as the RAM or institution database, or combinations of storages listed above (*see, e.g.*, NDMA website). |

| '742 Patent Claim 1 | NDMA System |
|---|---|
| a central server; | The NDMA system has a central server (*e.g., e*Server x342) (*see, e.g.,* NDMA website; IBM Case Studies, <u>National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging</u>, (www-306.com/software/success/)). |
| a central database accessible by said central server; | The NDMA system has a central database accessible by the central server (*e.g., e*Server x342) (*see, e.g.,* NDMA website; IBM Case Studies, <u>National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging</u>, (www-306.com/software/success/)). |
| a communication link between said central and institution servers; | The NDMA system has a communication link between the central (*e.g., e*Server x342) and institution servers (*e.g.,* Wall Plug™) (*see, e.g.,* NDMA website; IBM Case Studies, <u>National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging</u>, (www-306.com/software/success/)). |
| software executing on said central server for receiving the information from said institution server through the communication link; | The NDMA system has software executing on the central server (*e.g., e*Servers) for receiving the information from the institution server (*e.g.,* Wall Plug™) through the communication link. (*see, e.g.,* www.taborcommunications.com/dsstar/01/0703/103244.html; NDMA website; IBM Case Studies, <u>National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging</u>, (www-306.com/software/success/)). |
| software executing on the central server for storing the information on said central database; | The NDMA system has software executing on the central server (*e.g., e*Servers) for storing the information on the central database (*see, e.g.,* www.taborcommunications.com/dsstar/01/0703/103244.html; NDMA website; IBM Case Studies, <u>National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging</u>, (www-306.com/software/success/)). |

| '742 Patent Claim 1 | NDMA System |
|---|---|
| software executing on said institution server for automatically searching the index in response to a query, and for searching the warehouse server if the information has not been found on the institution server or the institution database; | The NDMA system has software executing on the institution server (*e.g.*, Wall Plug™) for automatically searching the index in response to a query, and for searching the warehouse server (*e.g.*, *e*Server x342) if the information has not been found on the institution server or the institution database (*see, e.g.*, NDMA website; IBM Case Studies, <u>National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging</u>, (www-306.com/software/success/)). |
| software executing on said warehouse server for transmitting the information to the institution server for storage thereon in response to the query; and | The NDMA system has software executing on the warehouse server (*e.g.*, *e*Server x342) for transmitting the information to the institution server (*e.g.*, Wall Plug™) for storage thereon in response to the query (*see, e.g.*, NDMA website; IBM Case Studies, <u>National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging</u>, (www-306.com/software/success/)). |
| software executing on said institution server for temporarily storing on the institution server and institution database, based upon various selected criteria, the retrieved information in anticipation of near future use by the institution. | The NDMA system has software executing on the institution server (*e.g.*, Wall Plug™) for temporarily storing on the institution server and institution database, based upon various selected criteria, the retrieved information in anticipation of near future use by the institution (*see, e.g.*, NDMA website; IBM Case Studies, <u>National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging</u>, (www-306.com/software/success/)). |

| '742 Patent Claim 2 | NDMA System |
|---|---|
| 2. The system defined in claim 1 further comprising an institution network interconnecting electronic devices selected from the group consisting of at least one Hospital Information System (HIS) terminal, at least one Radiology Information System (RIS) terminal, at least one computer, at least one view station, at least one MRI machine, at least one X-ray machine and a combination thereof, a communication link between the institution network and the institution | The NDMA system includes an institution network interconnecting electronic devices such as at least one Hospital Information System (HIS) terminal, at least one Radiology Information System (RIS) terminal, at least one computer, at least one view station, at least one MRI machine, at least one X-ray machine or a combination of electronic devices listed above (*see, e.g.*, NDMA website; IBM Case Studies, <u>National Scalable Cluster Laboratory: Grid Technology Brings Quantum Improvements to Medical Imaging</u>, (www-306.com/software/success/)). The NDMA system also has a communication link between the institution network and the institution server (*e.g.*, Wall Plug™) (*see, e.g.*, NDMA website; IBM Case |

## **VERIFICATION**

I, Henry Schaffer, state that I am an authorized representative of InSite One, Inc.; that I have read and know the contents of the foregoing DEFENDANT INSITE ONE, INC.'S RESPONSES TO PLAINTIFFS I3ARCHIVE, INC. AND NATIONAL DIGITAL MEDICAL ARCHIVE, INC.S' FIRST SET OF INTERROGATORIES NOS. 1-9; that the answers were prepared with the assistance and advice of counsel and the assistance of employees and representatives of the corporation, upon which I have relied; that the answers are subject to any inadvertent or undiscovered omissions or errors, or based on, and necessarily limited by, the records and information still in existence, presently recollected, and thus far discovered in the course of their preparation; that consequently, I reserve the right to make any changes in the answers if it appears at any time that omissions or errors have been made or that more accurate information is available; and, that subject to these limitations, the answers are true to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of February, 2007.

_____
Henry Schaffer
Chief Financial Officer and Executive Vice President
InSite One, Inc.
135 North Plains Industrial Road
Wallingford, CT 06492

# Exhibit 2


Positive
As of: May 09, 2007

**FORTERRA SYSTEMS, INC., a California Corporation, Plaintiff, v. AVATAR FACTORY, a California Corporation, IMVU, inc., a Delaware corporation, and WILLIAM D. HARVEY, an individual, Defendants.**

Case No.: C-05-04472 PVT

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

*2006 U.S. Dist. LEXIS 63100*

**August 22, 2006, Decided
August 22, 2006, Filed**

**SUBSEQUENT HISTORY:** Motion denied by, Moot *Forterra Sys. v. Avatar Factory, 2006 U.S. Dist. LEXIS 83107 (N.D. Cal., Nov. 7, 2006)*

**COUNSEL: [*1]** For Forterra Systems, Inc., a California corporation, Plaintiff: Byron W. Cooper, John E. Lord, Townsend, Townsend and Crew LLP, Palo Alto, CA.

For Avatar Factory, a California corporation, William D. Harvey, an individual, together dba doing business as The Will Harvey Company doing business as IMVU, Defendants: Alan J. Henrich, Morgan Chu, Richard Elgar Lyon, III, IRELL & MANELLA LLP, Los Angeles, CA.

**JUDGES:** PATRICIA V. TRUMBULL, United States Magistrate Judge.

**OPINION BY:** PATRICIA V. TRUMBULL

**OPINION:**

   **ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF SOURCE CODE; CONTINUING HEARING DATE ON MOTION FOR SUMMARY JUDGMENT; SETTING CASE MANAGEMENT CONFERENCE; AND VACATING DISCOVERY CUT-OFF**

**I. INTRODUCTION**

   Plaintiff Forterra Systems, Inc. ("Forterra") is the owner of *U.S. Patent No. 6,784,901* ("the *'901 patent*).

n1 The invention of the *'901 patent* relates to a method, system and computer program for delivering electronic chat messages in a three-dimensional ("3D") multi-user environment. Forterra claims that Defendant IMVU, Inc. ("IMVU") operates an on-line chat system that infringes the *'901 patent*. Presently before the court is Forterra's Motion to Compel IMVU to produce **[*2]** its source code in its entirety. For the following reasons, and under the following restrictions, Forterra's Motion is Granted.

> n1 The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

**II. DISCUSSION**

   Forterra seeks production of the entire source code both under Patent L.R. 3-4(a) and in response to discovery requests. Patent L.R. 3-4(a) provides that the infringement defendant must with the Preliminary Invalidity Contentions,

> produce or make available for inspection and copying: (a) Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart.

Patent L.R. 3-4(a). Patent Local rule 3-1(c) requires:

> A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for **[*3]** each element that such party contends is governed by *35 U.S.C. § 112(6)*, the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;

Patent L.R. 3-1(c). Thus the rule requires the source code for the aspects or elements of the accused product identified by the preliminary invalidity contentions. *See Cryptography Research, Inc. v. Visa Int'l Serv. Ass'n, 2005 U.S. Dist. LEXIS 37013, 2005 WL 1787421(N.D. Cal. Jul. 27, 2005)*(ordering defendant to produce any information relating to any aspect or element of the claims identified by [Plaintiff] in its Patent Local Rule 3-1(c) chart.).

IMVU claims that it has produced all of the information required by the Patent Local Rules. Forterra disagrees, claiming that it cannot analyze the limited portion of source code produced. Forterra also argues that regardless of whether the entire code had to be disclosed under the patent local rules, the entire source code is discoverable under *Rule 26* and that IMVU must produce the source code in response to properly propounded document requests.

The Federal Rules of Civil Procedure allow broad discovery: requested discovery **[*4]** is relevant if it "appears reasonably calculated to lead to the discovery of admissible evidence" relating to the claims or defenses of any party. *Fed. R. Civ. P. 26(b)(1)*. Because the entire source code is relevant under *Rule 26*, the court need not decide whether the entire code ought to have been disclosed. The question then becomes whether the burden to IMVU outweighs the benefit to Forterra. *Fed. R. Civ. P. 26(b)(2)(iii)*.

IMVU claims undue burden from the risk of inadvertent disclosure if the highly confidential and proprietary source code is produced to Forterra. A court may order that "confidential information not be revealed or be revealed only in a designated way." *Fed. R. Civ. P. 26(c)(7)*. Because the source code is at the heart of the dispute, Forterra's expert must have access to the entire source code. In order to limit the risk of inadvertent disclosure, the production shall be made only to Forterra expert Richard F. Ferraro ("Ferraro"). The parties shall meet and confer in order to specify the conditions under which production shall be made. The Court **[*5]** was impressed with the Ferraro declaration in support of the reply to this motion and recommends that the precautions outlined in paragraphs 17-19 be the starting point for the parties to discuss appropriate procedures. The Court also recommends that counsel include Mr. Ferraro and an IMVU expert in the discussion of appropriate safety precautions. When the parties have agreed upon the procedures, expert Ferraro will sign a declaration agreeing to be bound by the procedures and Forterra shall file the declaration. Within one week of the filing of Ferraro's declaration, IMVU shall provide the entire source code, including all versions and the source code repository database, in electronic format to Ferraro for his eyes only for review in his own office.

The parties shall also meet and confer and agree upon a procedure by which Ferraro can seek to change the designation of portions of the source code from his eyes only to outside counsel only. One possible method to for this process was discussed in court whereby Ferraro could write a letter to both Forterra and IMVU describing, in general terms, the portions of the source code for which he seeks to lower the designation to include **[*6]** outside counsel. If the parties cannot agree upon the portions of the code that should be re-designated, they can bring the matter back before the court.

### III. CONCLUSION

For the foregoing reasons, it is hereby Ordered that:

> 1. The parties shall meet and confer and agree upon appropriate procedures for Forterra expert Ferraro to view the entire source code, including the repository database, in his office in electronic format;
>
> 2. Forterra shall file a declaration from Ferraro agreeing to be bound by the procedures agreed upon by the parties;
>
> 3. Within 1 week of the filing of the Ferraro declaration, IMVU shall produce to Ferraro, for his eyes only, the entire source code, including the repository database, in electronic format for him to view in his office;
>
> 4. The parties shall meet and confer to agree upon a procedure by which Ferraro can seek to lower the designation of the source code to allow it to be viewed by outside counsel;

5. The discovery cut-off of September 7, 2006 is hereby Vacated;

6. Forterra's motion for partial summary judgment is Continued to September 19, 2006 at 11:30 a.m.; and

7. A Case Management Conference shall [*7] be held to set new discovery and trial dates in this matter on September 19, 2006 at 11:30 a.m.

IT IS SO ORDERED.

Dated: August 22, 2006

PATRICIA V. TRUMBULL

United States Magistrate Judge